**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL S. VALYOU,

                                        Plaintiff,

            - v -                                    16-CV-424
                                                       (DJS)

CSX TRANSPORTATION, INC.,

                                        Defendant.

**APPEARANCES:**                    **OF COUNSEL:**

NAUMES LAW GROUP, LLC              ROBERT T. NAUMES, ESQ.
Attorney for Plaintiff
2 Granite Avenue, Suite 425
Milton, MA 02186

NIXON PEABODY LLP                  ANDREW C. ROSE, ESQ.
Attorney for Defendant
677 Broadway
10th Floor
Albany, NY 12207

BURNS WHITE LLC                    T. H. LYDA, ESQ.
Attorney for Defendant
48 26th Street
Burns White Center
Pittsburgh, PA 15222

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM DECISION and ORDER</u>[1]

This action was brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et. seq.*, for injuries suffered by Plaintiff while in Defendant's employ. Dkt. No. 1, Compl. Plaintiff claims that he was injured as a result of Defendant's negligence. *Id.* at ¶ 3. Defendant now moves for summary judgment under FED. R. CIV. P. 56. Dkt. No. 38. Plaintiff opposes the Motion. Dkt. No. 39. For the reasons that follow, Defendant's Motion for Summary Judgment is **denied**.

## I. FACTUAL BACKGROUND

On August 29, 2013, Plaintiff was employed by Defendant as a machinist. Compl. at ¶ 2. On that date, Plaintiff was directed to inspect and qualify CSX locomotive 8867 ("the Locomotive"). Dkt. No. 38-5 at pp. 4-5.[2] While Plaintiff was working on the Locomotive, it exploded causing serious injuries to Plaintiff. Compl. at ¶ 4. The parties offer differing views of the facts and circumstances underlying Plaintiff's work on the Locomotive and the subsequent explosion. Those differing facts are discussed here only briefly to highlight the disputed factual questions that are discussed in more detail in Point III, *infra*.

As noted, Plaintiff alleges that he was directed to inspect and qualify CSX locomotive 8867. Dkt. No. 38-5 at pp. 4-5. Plaintiff testified that qualifying a locomotive entailed "check[ing] out the problem to see if there is a problem with it." *Id.* at p. 5.

---

[1] The parties have consented to have the undersigned handle all further proceedings in this matter. Dkt. No. 22.

[2] The parties have each submitted excerpts from various depositions. For ease of reference citation to those depositions throughout this Decision are made simply to docket numbers and the pagination provided by the Court's CM/ECF system.

Defendant maintains that crankcase overpressure had been reported regarding the Locomotive. *Id.* Crankcase overpressure is a dangerous condition involving "hot gases being generated inside the crankcase." *Id.* Plaintiff had been trained on how to address crankcase overpressure and had dealt with it before on other locomotive engines. *Id.* at p. 6.

As part of the process of qualifying the Locomotive, Plaintiff started it and permitted it to run while conducting certain inspections. *Id.* at p. 8. Plaintiff conducted two tests on the engine using a manometer to test pressure inside the Locomotive. *Id.* at pp. 8-9; Dkt. No. 39-5 at p. 3. Those tests showed no pressure in the Locomotive. Dkt. No. 38-5 at pp. 8-9. After the engine had run for a period of time, Plaintiff opened a top deck cover and the explosion soon followed. *Id.* at p. 13. Defendant maintains that Plaintiff should not have opened the top deck cover without first stopping the engine and permitting a mandatory fifteen-minute cooling off period. Dkt. No. 38-6 at p. 6. Plaintiff contends that this cooling off period applies only to crankcase covers, which he did not open, and not to the top deck cover. Dkt. No. 38-5 at p. 12.

CSX Safety Alert # 51 expressly prohibited employees from starting an engine when it had been "Dead on Arrival" prior to performing numerous preliminary operations. Dkt. No. 39-9. Locomotive 8867 arrived in the Selkirk, New York rail yard the prior day "Dead on Arrival." Dkt. No. 39-6 at p. 6. Plaintiff's supervisor was aware the Locomotive had been Dead on Arrival. *Id.* Plaintiff maintains that this information was not made available to him prior to working on the Locomotive. Dkt. No. 39-3, Pl.'s Dep. at ¶ 8. He further asserts that had it been, he would have refused to attempt to qualify the

Locomotive. *Id.* at ¶ 10. Locomotive 8867 had a history of maintenance issues including abnormal oil sample tests. *Id.* at ¶ 8. Plaintiff was unaware of this history at the time he was working on the Locomotive. *Id.* at ¶ 10.

## II. SUMMARY JUDGMENT UNDER FELA

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

> This ordinary summary judgment standard is considerably more plaintiff-friendly in FELA cases. In FELA cases, the standard for summary judgment is liberally construed in light of the strong federal policy in favor of letting juries decide cases arising under FELA. Accordingly, a FELA case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.

*Curran v. Long Island R.R. Co.*, 161 F. Supp. 3d 253, 256-57 (S.D.N.Y. 2016) (internal quotations and citations omitted). As a result, "an employer seeking summary judgment on FELA claims has 'a particularly heavy burden.'" *Monington v. CSX Transp., Inc.*, 2012 WL 716285, at *3 (N.D.N.Y. Mar. 6, 2012) (quoting *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F.Supp.2d 506, 514 (S.D.N.Y.2000)).

### III. DISCUSSION

"To succeed on a claim under FELA, a plaintiff 'must prove the traditional common law elements of negligence.'" *Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp.

3d 379, 384 (S.D.N.Y. 2017) (quoting *Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006)). This requires the plaintiff to establish "duty, breach, foreseeability, and causation." *Tufariello v. Long Island R.R. Co.*, 458 F.3d at 87; *see also Peterson v. Pan Am Railways, Inc.*, 2015 WL 2451227, at *7 (N.D.N.Y. May 21, 2015).

Defendant raises several issues on this Motion. It first argues that it did not breach any duty of care owed to Plaintiff. Dkt. No. 38-2, Def.'s Mem. of Law at pp. 8-10. Next, Defendant contends that because Plaintiff was the sole cause of the accident resulting in his injuries, it is not liable under FELA. *Id.* at pp. 10-12.

## A. Defendant's Breach of Duty

"Defendant had a duty to provide its employees with a safe workplace." *Cogan v. Nat. R.R. Passenger Corp.*, 2015 WL 1417130, at *9 (N.D.N.Y. Mar. 27, 2015) (citing *Tufariello v. Long Island. R.R. Co.*, 458 F.3d at 91). "An employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir. 1989). "Reasonable care is determined in light of whether or not a particular danger was foreseeable." *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994).

Plaintiff specifically alleges that Defendant failed to properly maintain Locomotive 8867. Compl. at ¶ 4. In the months leading up to the explosion, maintenance records indicate that the Locomotive had abnormal oil samples, including evidence of metal contamination, problems with its fuel injection system, and other indications of problems with the engine. Dkt. 39-5 at pp. 18-19; Dkt. No. 39-4 at p. 4. Defendant's

own employee testified that a faulty bearing was a contributing factor to the explosion and that this failure could have happened over a long period of time or very quickly. Dkt. No. 38-6 at pp. 6-8. While Defendant may be able to show that it acted reasonably in addressing these maintenance issues leading up to the events giving rise to this litigation, and thus prove to a jury that it did not breach its duty to provide Plaintiff with a safe workplace, it has not made that showing as a matter of law here and, therefore, is not entitled to summary judgment on this basis. In *Sinclair v. Long Island R.R.*, the Second Circuit stated "[w]e have held that whether the railroad used reasonable care in furnishing its employees a safe place to work is normally a question for the jury." 985 F.2d 74, 77 (2d Cir. 1993) (internal quotation and citation omitted). On this record, whether CSX properly maintained Locomotive 8867 is clearly a question that should be left to the jury.

The Court notes that questions of fact are also present as to Defendant's argument that it properly trained Plaintiff how to perform his job safely, in particular with regard to the handling of crankcase overpressure. Def.'s Mem. of Law at p. 9. Plaintiff certainly received training from Defendant and did testify to handling other cases of crankcase overpressure in the past. Dkt. No. 38-5 at p. 6. The record on this Motion, however, presents questions of fact about the particular situation presented to Plaintiff on August 29th. Defendant's submissions are clearly premised on the theory that crankcase overpressure was the primary maintenance issue Plaintiff faced on the date in question, focus on the policies and procedures for dealing with that problem, and base its argument against liability on Plaintiff's failure to properly address that type of mechanical problem. Def.'s Mem. of Law at pp. 9-10. Several facts, however, raise questions as to whether

crankcase overpressure was, in fact, the primary mechanical issue that day or, at the very least, whether that should have been apparent to Plaintiff in the moments leading up to the Locomotive exploding.

As noted, Plaintiff denies being aware of facts that he contends would have been significant to the performance of his assigned task, including prior oil sample test results and the fact that the Locomotive had been Dead on Arrival prior to him working on it. Pl.'s Aff. at ¶¶ 8-10. Whether the failure to provide Plaintiff this information constituted a breach of Defendant's duty to Plaintiff is also a question for the jury. *Sinclair v. Long Island R.R.*, 985 F.2d at 77. Plaintiff also testified that he conducted pressure tests on the Locomotive that, to him, suggested the lack of a crankcase pressure issue. Dkt. No. 38-5 at pp. 8-9. Defendant's witnesses concede that the cause of the explosion was related to a bad bearing in the engine. *See* Dkt. No. 38-6 at pp. 6-7. Taken together, these facts present factual questions best resolved by the jury as to whether the Locomotive was properly maintained by CSX and whether the explosion was caused specifically as a result of Plaintiff's actions or other underlying defects in the Locomotive of which Plaintiff may not have been aware. *See Syverson v. Consol. Rail Corp.*, 19 F.3d at 826 ("Reasonable care is determined in light of whether or not a particular danger was foreseeable.").

### B. Plaintiff's Alleged Contributory Negligence

Defendant also argues that Plaintiff's "own failure to use reasonable care is a bar to this FELA lawsuit." Def.'s Mem. of Law at p. 10. Defendant concedes that contributory negligence does not bar recovery under FELA, though it may result in a reduction in damages. *Id.* at pp. 10-11; *see also Norfolk S. Ry. Co. v. Sorrell*, 549 U.S.

158, 160 (2007). It instead argues that Plaintiff was the "sole cause" of his injuries and thus it cannot be liable to Plaintiff for those injuries. Def.'s Mem. of Law at p. 11 (citing cases). Plaintiff counters that Defendant has failed to carry its burden to show that he was the sole cause of his injuries. Pl.'s Mem. of Law at pp. 14-16. The Court agrees with Plaintiff and concludes that questions of fact preclude finding as a matter of law that Plaintiff was the sole cause of the incident underlying his injuries.

"If, in fact, Plaintiff's own negligence were the sole cause of his injury, he would not be able to recover under FELA." *Waggoner v. Ohio Cent. R.R.*, 2007 WL 4224217, at *10 (S.D. Ohio Nov. 27, 2007), *modified on other grounds*, 2007 WL 4615788 (S.D. Ohio Dec. 31, 2007). "FELA's extremely lenient causation standard requires only that the plaintiff show that 'the negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.'" *Romero v. CSX Transp., Inc.*, 2008 WL 5156677, at *9 (D.N.J. Dec. 9, 2008) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 (1957)). Viewed under this standard, the evidence submitted on this Motion does not unequivocally establish that Plaintiff was the sole cause of his injury.

Defendant asserts that Plaintiff was the sole cause of the explosion as a result of a number of actions he took or failed to take. *See* Def.'s Mem of Law at pp. 11-12. A discussion of the facts related to these actions, however, illustrates that questions of fact exist. Defendant, for example, asserts that Plaintiff was negligent in opening the crankcase cover on the Locomotive after running the engine without giving it sufficient time to cool. *See* Dkt. No. 38-1 at ¶¶ 19-20. Plaintiff, however, contends that he opened the "top deck cover" which he did not believe required a cooling off period. Dkt. No. 38-

5 at p. 11. Timothy Healey, CSX's Director of Locomotive Engineering and formerly its Director of Mechanical Systems, Dkt. No. 38-7 at p. 2, testified when asked about CSX policies and rules that "[i]t's not a violation to open a top deck cover." Dkt. No. 39-5 at p. 29. This testimony is buttressed by Dan Lisowsky, Defendant's Rule 30(b)(6) representative, who testified that it was not *per se* a violation of any rule to open the top deck of the Locomotive. Dkt. No. 38-6 at p. 14. This evidence does not establish that opening the deck cover was either negligent or the sole cause of the accident.

Defendant also contends that Plaintiff was negligent because he "failed to review locomotive 8867's shopping history, failure history and oil lab history as required by CSXT's instructions." Def.'s Mem of Law at p. 11. Plaintiff's testimony, however, was that the "work package" containing information regarding the oil records and other relevant maintenance information was not made available to him on the day he was working on the Locomotive. Dkt. No. 39-4 at p. 4; *see also* Dkt. No. 39-5 at p. 14 (noting entire maintenance history not contained in "work package" provided to machinist). Questions of fact, therefore, exist as to whether Plaintiff in fact had access to the information Defendant claims Plaintiff failed to review.

Moreover, Plaintiff's supervisors knew that locomotive 8867 was "Dead on Arrival". Dkt. No. 39-6 at p. 6. Plaintiff maintains that he was not made aware of this or the fact that the Locomotive had a history of crankcase overpressure. Pl.'s Aff. at ¶ 8. The record establishes that CSX Safety Alert # 51 provides specific instruction that "NO attempt to will be made to start any locomotive received "Dead on Arrival." Dkt. No. 39-9 (emphasis in original). Given the record evidence showing that Plaintiff's supervisors

knew of this history, but may have failed to advise Plaintiff, this too raises questions of fact as to whether Plaintiff was the "sole cause" of the accident.

Cognizant of the fact that if "the negligence of the employer played any part, however small, in the injury," *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. at 508, Plaintiff can recover, these facts provide a sufficient basis on which to deny summary judgment. The Court reaches no conclusion about the fault of the parties, but "even assuming one concludes that the plaintiff's negligence played a significant part in the accident, but was not the sole cause of the mishap, the plaintiff still recovers." *Higgins v. Consol. Rail Corp.*, 638 F. Supp. 254, 258 (D. Conn. 1986). Here, the evidence is sufficient to leave that question to a jury.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 38) is **DENIED**; and it is further

**ORDERED**, that a Pretrial Conference is scheduled for July 17, 2019 at 10:30 a.m. at the Chambers of the undersigned; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum Decision and Order upon the parties to this action.

Date:  June 14, 2019
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge